IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL MCGRATH,

      Plaintiff,

vs.                                    No. CIV 14-0504 JB/SCY

CITY OF ALBUQUERQUE;
CITY PERSONNEL BOARD;
RICHARD BERRY, Mayor;
ROBERT PERRY, Chief Administrative
Officer; BRUCE RIZZIERI, Transit Dept.
Director; and PAULA FORNEY, Attorney,

      Defendants.

**MEMORANDUM OPINION AND AMENDED ORDER**[1]

**THIS MATTER** comes before the Court on: (i) Defendant Paula I. Forney's Motion to

Dismiss, filed June 4, 2014 (Doc. 14)("MTD"); and (ii) the Plaintiff's Motion to Remand, filed

June 26, 2014 (Doc. 20)("MTR"). The Court held a hearing on March 17, 2015. The primary

issues are: (i) whether the Court should remand this case to state court, given the failure of

Defendants City of Albuquerque, City of Albuquerque Personnel Board, Mayor Richard Berry,

Robert Perry, and Bruce Rizzieri (the "City Defendants") to personally sign the notices of

removal of this case to federal court; and (ii) whether the Court should dismiss Plaintiff Michael

---

[1]On March 18, 2015, the Court entered: (i) an order granting the Defendant Paula I.
Forney's Motion to Dismiss, filed June 4, 2014 (Doc. 14), see Order, filed March 18, 2015
(Doc. 34)("MTD Order"); and (ii) an order denying the Plaintiff's Motion to Remand, filed June
26, 2014 (Doc. 20), Order, filed March 18, 2015 (Doc. 36)("MTR Order"). Both orders stated
that the Court would "at a later date issue a memorandum opinion more fully detailing its
rationale for this decision." MTD Order at 1 n.1; MTR Order at 1 n.1. This Memorandum
Opinion is the promised opinion for those orders. The Court is amending the MTD Order,
because it granted the MTD in full rather than in part. This Memorandum Opinion and
Amended Order thus clarifies that the Court is dismissing Plaintiff Michael McGrath's claims
against Forney without prejudice rather than with prejudice, as was set forth in the MTD Order.

McGrath's claims against Defendant Paula Forney in the Complaint for Violation of Statutory and Constitutional Rights, filed in state court on January 9, 2014, filed in federal court on May 27, 2014 (Doc. 1-1)("Complaint").  The Court will not remand this case to state court, because all of the Defendants in this case properly consented to the removal through their attorneys.  The Court will dismiss all of McGrath's claims against Forney without prejudice, because McGrath did not respond to the MTD, and because he failed to timely serve Forney a copy of the Complaint.  Accordingly, the Court will deny the MTR and grant the MTD in part.[2]

## FACTUAL BACKGROUND

This is for an alleged unlawful termination.  The Court takes its facts from the Complaint, as it must when ruling on a motion under rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 1.        The Parties.

McGrath is a resident of Albuquerque, New Mexico, and the City of Albuquerque Transit Department employed him as a bus driver.  See Complaint ¶ 1, at 1.  Perry is the City of Albuquerque's Chief Administrative Officer and "primary policy-maker."  Complaint ¶ 2, at 1.  Rizzieri is the Director of the Transit Department.  See Complaint ¶ 2, at 1.  Forney is a former Assistant City Attorney "who now contracts with the City to represent the City and City officials."  Complaint ¶ 3, at 1.  The Personnel Board "is supposed to consist of five members, two selected by the Mayor and two by a vote of City employees, who select a neutral chairperson," but the "current [Personnel] Board is missing one of its employee members and only has four members."  Complaint ¶ 4, at 2.

---

[2]The MTD asks the Court to dismiss McGrath's claims against Forney with prejudice. As the Court explains in more detail in the remainder of the Memorandum Opinion, given McGrath's current pro se status, the Court concludes that it is more appropriate to dismiss his claims without prejudice.  Consequently, the Court will only grant the relief requested in the MTD in part.

**2.      The Transit Department's Disciplinary Action Against McGrath.**

McGrath was a full-time classified[3] bus driver for the City of Albuquerque when the Defendants terminated his employment "under the City's zero-tolerance drug testing policy [(the 'Substance Abuse Policy')] on February 25, 2008."  Complaint ¶ 7, at 2.  McGrath appealed his termination, and on September 26, 2008, City of Albuquerque Personnel Hearing Officer Patrick Bingham "heard testimony."  Complaint ¶ 8, at 2.  Bingham recommended upholding McGrath's termination for just cause, because McGrath violated the Substance Abuse Policy.  See Complaint ¶ 8, at 2.  Because of concerns about the City of Albuquerque's "failure to negotiate"[4] the Policy, however, the Personnel Board remanded the case to Bingham "for determination of whether the City and its Unions had reached impasse prior to the imposition by the City of the revised 2006 [Substance Abuse Policy]."  Complaint ¶ 9, at 2 (internal quotation marks omitted).  "The Hearing Officer subsequently did nothing and the Personnel Board took no action."  Complaint ¶ 9, at 2.

"The City Labor Board[5] . . . had previously concluded that[,] when the City attempted to re-implement its zero-tolerance penalty the parties[,] were not at [an] impasse, but that the City had negotiated over drug testing penalties in good faith."  Complaint ¶ 10, at 3 (internal

---

[3]The Supreme Court of New Mexico has defined a "classified employee" as "one who is permanently employed by the City [of Albuquerque] and entitled to all rights and benefits guaranteed by the merit system, one of which is recourse to the grievance procedure."  Lovato v. City of Albuquerque, 1987-NMSC-086, ¶ 2, 742 P.2d 499.

[4]The Complaint does not explain how or why the City of Albuquerque failed to negotiate the Policy.

[5]It is unclear, but it appears that the Complaint is referring to the Labor Management Relations Board for the City of Albuquerque.  See Labor Management Relations Board, City of Albuquerque,  https://www.cabq.gov/clerk/administrative-hearings/labor-management-relations-board (last visited July 31, 2015).

quotation marks omitted).  "NMTU[6] appealed the good faith conclusion to the State district court."  Complaint ¶ 10, at 3.  In November, 2009, the Honorable Valerie A. Huling, District Judge, Second Judicial District, County of Bernalillo, State of New Mexico, "reversed the Labor Board, finding the City . . . neither negotiated in good faith nor to the point of impasse."  Complaint ¶ 11, at 3 (citation omitted)(internal quotation marks omitted).  Judge Huling thus remanded the matter to the Labor Board "to make appropriate findings and conclusions and to provide appropriate relief."  Complaint ¶ 11, at 3 (citation omitted)(internal quotation marks omitted).

In December, 2009, "the [Mayor] Berry Administration disbanded the Labor Board and there were no more meetings of the Labor Board until June, 2011."  Complaint ¶ 12, at 3.  McGrath's termination case was still pending before Bingham when Forney, Perry, "Ennen,"[7] and Rizzieri generated a "Notice of Reinstatement" and a new "Pre-determination Hearing Notice."  Complaint ¶ 13, at 3 (internal quotation marks omitted).  The Pre-determination Hearing Notice re-charged McGrath with his 2008 drug-testing violation and added the following charges:

> Ms. Forney and M[r]. Rizzieri additionally accused McGrath of violations of Rule 301.1 (Duty to the Public); 301.2 (Professional Excellence); 301.3 (Standards of Conduct); 301.8 (Safety); 311 (Alcohol/Drug Possession and Consumption); and 902.1 (Reasons for Disciplinary Actions) (C)(Incompetence, inefficiency or inadequate performance of duties); (G)(Misconduct); (K)(Violation of Substance Abuse Policy); and (M)(Other disciplinary reasons): (1)(Call into question employees ability to perform assigned duties or job

---

[6]The Complaint does not define "NMTU," but it likely stands for the New Mexico Transportation Union.  See NMTU Home Page, New Mexico Transportation Union, http://www.nmtu.net/ (last visited July 31, 2015)(referring to the New Mexico Transportation Union as the "NMTU").

[7]The Complaint does not provide Ennen's first name, does not name him as a defendant, and does not provide any other information about him.

functions); (2)(harm public respect) and (3)(impair the operation or efficiency of any City department).

Complaint ¶ 14, at 3 n.1.

On August 6, 2010, Rizzieri approved new findings, "including the false contention that McGrath was impaired while driving a City of Albuquerque bus."  Complaint ¶ 15, at 4 (internal quotation marks omitted)(emphases omitted).   Although McGrath "had not been returned to work, was represented by counsel, and was challenging his termination," Forney, Perry and Rizzieri again terminated McGrath for his 2008 drug-testing violation.   Complaint ¶ 16, at 4 (internal quotation marks omitted).  When Rizzieri terminated McGrath's employment a second time, Rizzieri knew "that the positive test result had been more than two years before and that McGrath had been fired then."  Complaint ¶ 17, at 4.  Rizzieri did not consider the length of time that had passed since McGrath's 2008 failed drug test in making his termination decision, because "a positive test is a positive test[,]" and he thought that it would "set a bad precedent that anyone could test positive for cocaine, have a less than exemplar[y] record, and still keep [his] position as a bus driver."  Complaint ¶ 17, at 4 (internal quotation marks omitted).

On February 8, 2011, the City of Albuquerque issued a "Supplement to Substance Abuse Policy" ("Supplement") to clarify the Substance Abuse Policy.  Complaint ¶ 18, at 4.  The Supplement explained that "[t]he Second Judicial district court invalidated the discipline provisions of the 2006 Substance Abuse Policy" and clarified that, until a new Substance Abuse Policy is enacted, the City of Albuquerque would "apply the 2006 policy but will apply the discipline procedures in the 1999 policy."[8]   Complaint ¶ 18, at 4 (internal quotation marks omitted).

_____

[8]The Complaint does not explain the discipline procedures in the 1999 Substance Abuse Policy.

Bingham held another hearing on McGrath's termination, "and this time recommended reinstatement to City employment with back pay and benefits."  Complaint ¶ 19, at 4.  The Personnel Board accepted Bingham's recommendation, but modified it to provide that the City of Albuquerque would "reinstate McGrath to a non-safety sensitive position."  Complaint ¶ 19, at 4 (internal quotation marks omitted).

      **3.**        **The City of Albuquerque's Appeal.**

On July 28, 2011, Forney appealed the Personnel Board's decision to the Second Judicial District Court, and on September 30, 2011, she filed the "City's Statement of Appellate Issues." Complaint ¶ 20, at 5.  On November 21, 2011, Forney removed the appeal to the United States District Court for the District of New Mexico, contending that, "for the first time in the City's appeal, McGrath alleged that his constitutional rights were violated, that the City violated his right to due process and that the City's actions in terminating McGrath were oppressive and unfair."  Complaint ¶ 21, at 5.  Forney argued that McGrath could have brought a claim that his "due process and constitutional rights were allegedly violated in either state or federal court"; alternatively, he "could have asserted a claim under 28 U.S.C. Sec. 1983 asking for reinstatement."  Complaint ¶ 22, at 5 (internal quotation marks omitted).  "Instead," Forney asserted, he "elected to raise his constitutional claims before the state district court in responding to the City's Statement of Appellate Issues."  Complaint ¶ 22, at 5 (internal quotation marks omitted).  The United States District Court for the District of New Mexico held that Forney's removal of the case to federal court "was without an objective basis," and "remanded the case to the State district court and awarded sanctions against Ms. Forney."[9]  Complaint ¶ 24, at 5.

---

[9]The Complaint does not identify which United States District Judge in the District of New Mexico made this ruling, but the case's docket sheet on CM/ECF says that the case was assigned to the Honorable Judith C. Herrera.

The Personnel Board "did nothing to enforce its reinstatement Order and did not oppose the City's appeal of the Personnel Board's decision to reinstate McGrath."  Complaint ¶ 25, at 5 (internal quotation marks omitted).  While the case was still in federal court, Forney filed a "Notice of Supplemental Authority" that "consist[ed] of a ruling by Judge Beatrice Brickhouse, a State district judge, on the case of Reginald Adolph, another City bus driver."  Complaint ¶ 26, at 6.  Neither Forney nor Judge Brickhouse disclosed that, "before she became a district judge, Beatrice Brickhouse was an Assistant City Attorney and co-counsel with Paula Forney on the City's drug testing cases."  Complaint ¶ 27, at 6.

On February 1, 2012, Forney, "Mr. Yermal,"[10] and Perry reinstated "the old zero-tolerance [drug testing] penalty, again ignoring and deliberately violating the requirement that drug testing penalties must be negotiated with the unions."  Complaint ¶ 28, at 6.  Although the City of Albuquerque's administrative appeal "had been fully briefed by December, 2011," the Honorable Alan M. Malott, State District Judge for the Second Judicial District of New Mexico, "refused to act on the case and in May, 2013, . . set a September, 2013, Scheduling Conference."  Complaint ¶ 29, at 6 (internal quotation marks omitted).  The day after the Scheduling Conference, Judge Malott recused himself.  See Complaint ¶ 29, at 6.  Forney then filed a motion to stay her appeal of the Personnel Board's reinstatement order "as she again arranged for the reinstatement and termination of McGrath's employment for the third time."  Complaint ¶ 30, at 6.  "Although McGrath is still represented by counsel, Ms. Forney and the City Defendants have now purportedly terminated McGrath's employment for the third time, this time for his failure to appear in response to Ms. Forney's orders."  Complaint ¶ 31, at 6.

---

[10]The Complaint does not provide Mr. Yermal's first name or any other information about him.

4.      __The City of Albuquerque's Merit System__.

The Charter of the City of Albuquerque "requires the City to maintain an active Personnel Board under a Merit System of personnel management."  Complaint ¶ 32, at 6.  The Merit System is intended to provide a means to resolve disputes and disciplinary matters at the lowest level and with the least expense possible.  See Complaint ¶ 32, at 7.  The Charter provides that the Mayor "'shall . . . .  (c) Be responsible for the administration and protection of the merit system; . . . [and] (d) With the advice and consent of the Council, hire or appoint the City Attorney, an officer to administer the merit system, and all other senior administrative or cabinet level officers . . . .'"    Complaint ¶ 34, at 7 (alterations in Complaint but not quoted source)(emphasis in Complaint but not quoted source)(quoting Charter).  The Defendants have not hired or appointed an officer to administer the merit system, as the Charter requires.  See Complaint ¶ 35, at 7.  To the contrary, "in its Merit System Ordinance (MSO) the Mayor erroneously 'designates the Chief Administrative Officer (CAO) of the city to be responsible for the administration of the merit system.'"    Complaint ¶ 36, at 7 (quoting MSO, § 3-1-1). Consequently, "in the absence of supervision, oversight, and a fair and neutral hearing process, City officials and City attorneys are administering and controlling the Personnel Board and its Hearing Officers in a manner that is biased, unfair, and contrary" to McGrath's and other City of Albuquerque employees' rights.  Complaint ¶ 37, at 7.

## PROCEDURAL BACKGROUND

McGrath filed suit in state court on January 9, 2014, see Complaint at 1, and the Defendants removed the case to federal court on May 27, 2014, see Notice of Removal, filed May 27, 2014 (Doc. 1).  McGrath asserts six causes of action: (i) due process and equal protection, see Complaint ¶¶ 41-49, at 6 (Count I); (ii) breach of contract and duty of good faith,

see Complaint ¶¶ 50-53, at 9-10 (Count II); (iii) a Fourth Amendment unlawful search, see Complaint ¶¶ 54-59, at 10-11 (Count III); (iv) wrongful prosecution and defamation, see Complaint ¶¶ 60-64, at 11 (Count IV); (v) professional misconduct, see Complaint ¶¶ 65-72, at 12-13 (Count V); and (vi) prohibited labor practices, see Complaint ¶¶ 73-77, at 13.  McGrath asks for: (i) declaratory and compensatory relief for all of his claims; (ii) reinstatement; (iii) calculation and payment of back pay, benefits, and actual damages "so as to make Plaintiff whole"; (iv) injunctive relief, nominal damages, punitive damages, costs and reasonable attorney's fees; and (v) "such other and further relief as the Court deems just."  Complaint ¶¶ A-D, at 14.

> **1.      The MTD.**

Forney filed the MTD on June 4, 2014.  Forney advances four arguments.  First, she asserts that the Court should dismiss McGrath's claims against her, because he failed to serve the Complaint on her within the requisite 120-day period.  See MTD at 4 (citing Fed. R. Civ. P. 4).  Forney asserts that McGrath's former attorney -- Paul Livingston -- has "engaged in a pattern of suing the City of Albuquerque and its officials and attorneys in connection with employment decisions," is fully aware of her whereabouts, and has successfully served her in another case.  MTD at 5.  Forney argues that, because McGrath has failed to show good cause to excuse his untimely service of process, the Court should dismiss his claims against her.  See MTD at 5.

Second, she contends that the Court should dismiss McGrath's "due process and equal protection," "wrongful prosecution and defamation," and "professional misconduct" claims against her, because she is entitled to qualified immunity.  MTD at 5.  Forney says that, during the time material to the Complaint, she initially acted as an employee of the City of Albuquerque and later served as an attorney for the City of Albuquerque under a contract to provide legal

services.  See MTD at 7.  Forney explains that, in Filarsky v. Delia, 132 S. Ct. 1657 (2012), the

Supreme Court of the United States "made clear that a contract attorney is entitled to the same

qualified immunity as an attorney employed by a governmental entity."  MTD at 7.

> In holding that a contract attorney is entitled to qualified immunity, the
> Filarsky Court articulated several reasons for affording that immunity.  First, the
> government interest in avoiding unwarranted timidity on the part of those engaged
> in the public's business -- which has been called "the most important special
> government immunity-producing concern," -- is equally implicated regardless of
> whether the individual sued as a state actor works for the government full-time or
> on some other basis such as a contract.  Second, affording immunity to those
> acting on the government's behalf serves to "ensure that talented candidates [are]
> not deterred by the threat of damages suits from entering public service."
>
> The government, in need of specialized knowledge or expertise, may look
> outside its permanent workforce to secure the services of private individuals.  But
> because those individuals are free to choose other work that would not expose
> them to liability for government actions, the most talented candidates might
> decline public engagements if they did not receive the same immunity enjoyed by
> their public employee counterparts.  Third, the public interest in ensuring
> performance of government duties free from the distractions that can accompany
> lawsuits is implicated whether those duties are discharged by private individuals
> or permanent government employees.  Finally, distinguishing among those who
> carry out the public's business based on their particular relationship with the
> government creates significant line-drawing problems and can deprive state actors
> of the ability to reasonably anticipate when their conduct may give rise to liability
> for damages.

MTD at 8.

Forney argues that, under Filarsky v. Delia, she is entitled to qualified immunity unless

she violated McGrath's clearly established constitutional rights.  See MTD at 9.  Forney

contends that, even though the Complaint contains "conclusory allegations of due process

violations," its factual allegations "fail to establish any violation of a constitutional right by

Ms. Forney."  MTD at 9.  Forney maintains that, to the contrary, the Complaint's allegations

demonstrate that she "did no more than competently represent her client by terminating

Plaintiff's employment, participating in proceedings before the City Personnel Board, and

prosecuting appeals, on behalf of the City, regarding any reinstatement of the Plaintiff to City employment."  MTD at 9.  Forney asserts that, consequently, the Court should dismiss with prejudice McGrath's "due process and equal protection," "wrongful prosecution and defamation," and "professional misconduct" claims against her.  MTD at 9.

Third, Forney says the Court should dismiss McGrath's claims against her for "breach of contract and duty of good faith," "violation of the Fourth Amendment," "wrongful prosecution and defamation," "professional misconduct," and "prohibited labor practices," because she "owed no duty" to McGrath.  MTD at 9.  Forney points out that McGrath's breach-of-contract, duty-of-good-faith, and Fourth Amendment claims do not appear to be directed at her, but, in any event, fail to state a claim for relief.  See MTD at 10.  Forney asserts that all of McGrath's claims, to the extent that they can be construed against her, arise out of her actions as a City of Albuquerque attorney.  See MTD at 10.  Forney contends that, as the opposing attorney in McGrath's case, she owed no duty to him, and he therefore cannot assert those claims against her.  See MTD at 10.  Forney adds that New Mexico law is clear that a litigant does not have a cause of action "for conduct and statements by the attorneys for the opposing party in legal proceedings."  MTD at 10 (citing Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A., 1988-NMSC-014, ¶¶ 11-17, 750 P.2d 118, 122-23; Gelinas v. Gabriel, 1987-NMCA-097, 741 P.2d 443).  Forney urges that her sole duty as the City of Albuquerque's attorney was to protect the interests of her client.  See MTD at 10.  Forney argues that, accordingly, McGrath cannot maintain any claims against her for her conduct in representing the City of Albuquerque in his termination case.  See MTD at 10-11.

Fourth, and finally, Forney asserts that the Court should dismiss McGrath's defamation claim against her, because McGrath has not alleged any of the elements of defamation.  See

MTD at 11.   Forney says that, in particular, McGrath has not alleged that any of Forney's statements about him were false, or that Forney acted maliciously or negligently in making those statements.   See MTD at 11.   Forney argues that, consequently, the Court should dismiss McGrath's defamation claim against her.[11]   See MTD at 11-12.

## 2.      **The MTR.**

McGrath filed the MTR on June 26, 2014.   In the MTR, McGrath asks the Court to remand this case, because the Notice "does not include any statement or other indication that any of the Defendant purportedly represented by the Assistant City attorneys . . . had consented to removal of this action." MTR ¶ 3, at 1.   McGrath points out that the Personnel Board has only filed a "Consent to Removal" that only Assistant City Attorneys Debra Moulton and Deborah Wells signed.   MTR ¶ 4, at 2 (internal quotation marks omitted).   McGrath explains that there is a split among the United States Courts of Appeals whether each defendant must consent to a removal in writing, or whether one defendant can "vouch" for another's consent, provided that party has actually consented and that the attorney is properly representing her client.   MTR at 4. According to McGrath, the United States Courts of Appeals for the Fifth, Seventh, and Eighth Circuits require individual consent in writing.   See MTR at 4.   By contrast, McGrath says, the United States Courts of Appeals for the Sixth and Ninth Circuits permit a defendant to consent on another defendant's behalf.   See MTR at 4 (citing Jayne S. Ressler, Removing Removal's Unanimity Rule, 50 Hous. L. Rev. 1391 (Spring, 2013)).

McGrath argues that, "not only have the majority of jurisdictions required at least the 'independent and unambiguous' notice of the party's 'consent and its intent to join in the

---

[11]McGrath did not respond to the MTD, and Forney did not file a reply.   On June 25, 2014, Forney filed a Notice of Completion of Briefing (Doc. 19)("Notice"), stating that McGrath's failure to respond to the MTD constitutes consent to grant the MTD under D.N.M.LR-Civ. 7.1(b).

removal within the thirty-day period,'"  MTR at 4 (quoting <u>Wakefield v. Olcott</u>, 983 F. Supp. 1018, 1021 (D. Kan. 1997)), this matter "was conclusively decided by Judge Parker in a very similar case involving most of the same attorneys,"  MTR at 4 (citing <u>Anderson v. City of Albuquerque</u>, No. CIV 13-1102 JAP/ACT, slip op. at 4 (D.N.M. Jan. 23, 2014)(Doc. 31)). McGrath points out that, in <u>Anderson v. City of Albuquerque</u>, Judge Parker remanded the case to state court, holding that "'it is well established that the procedural requirements for removal are strictly enforced and that all doubts are to be resolved against removal.'"  MTR at 5 (quoting <u>Anderson v. City of Albuquerque</u>, slip op. at 4)(internal quotation marks omitted).  McGrath asserts that it is apparent from the Personnel Board's "prior minutes and audio recordings of its meetings" that the Personnel Board's members are unaware of "even the existence of this lawsuit, to say nothing of the claims against them."  MTR at 5.  McGrath says that, "[e]ven with the most lenient court, if the attorneys have not informed their clients about the case, they can hardly be said to consent to its removal."  MTR at 6 (internal quotation marks omitted). McGrath urges that, because the Personnel Board did not provide the Court written notice of its consent to the case, the removal was procedurally defective and the Court should remand the case.  <u>See</u> MTR at 5.

The City Defendants responded to the MTR on July 1, 2014.  <u>See</u> City Defendants' Response to Plaintiff's Motion to Remand and Memorandum in Support, filed July 1, 2014 (Doc. 22)("Response").[12]  In the Response, the City Defendants contend that this case was properly removed, because all of the Defendants filed separate consents to removal which their attorneys signed on their behalf.  <u>See</u> Response at 1.  The City Defendants point out that the

---

[12]The Personnel Board joined in the Response.  <u>See</u> Defendant City Personnel Board's Notice of Joined in Defendants City of Albuquerque, Richard Berry, Robert Perry and Bruce Rizzieri's Response to Plaintiff's Motion to Remand, filed July 9, 2014 (Doc. 28).

statutes and rules governing removal do not require the individual defendants' signatures, but --
as with all pleadings -- allow their attorneys to sign on their behalf.  <u>See</u> Response at 1 (citing
<u>Roybal v. City of Albuquerque</u>, No. CIV 08-0181 JB/LFG, 2008 WL 5991063, at *6-8 (D.N.M.
Sept. 24, 2008)(Browning, J.)).  The City Defendants argue that no District Judge in the District
of New Mexico has "asserted that the attorneys must provide the actual signatures of their
respective clients."  Response at 6.  The City Defendants urge that, because all of the Defendants
properly consented to removal, the removal was valid, and the Court should not remand the case.
<u>See</u> Response at 6.

McGrath replied to the Response on July 21, 2014.  <u>See</u> Plaintiff's Reply to City
Attorneys' Response to Plaintiff's Motion to Remand, filed July 21, 2014 (Doc. 30)("Reply").
In the Reply, McGrath hones his argument slightly: he asserts that an attorney's certification that
a client has consented to removal is valid only "if the client has <u>actually</u> consented, with the
knowledge required to provide informed consent."  Reply at 6 (emphasis in Response)(citing §
16-100(E), N.M. R. Prof. Conduct).  McGrath explains that informed consent requires that each
client "be aware of the relevant circumstances and of the material and reasonably foreseeable
ways that the conflict could have adverse effects on the interests of that client."  Reply at 4
(quoting  § 16-107, cmt. N.M. R. Prof. Conduct)(internal quotation marks omitted).  McGrath
argues that, because the Defendants "are neither informed nor aware of the litigation itself," or of
their attorneys' request for removal, they could not have given informed consent to the removal.
Response at 6.  McGrath asserts that, accordingly, removal was improper.  <u>See</u> Reply at 6-7.

3.      **The Hearing**.

The Court held a hearing on the MTD and the MTR on March 17, 2015.  <u>See</u> Transcript of Hearing (taken March 17, 2015)("Tr.").[13]  The hearing was short, largely because neither McGrath nor any attorney for McGrath made an appearance.[14]  The Court noted that its Courtroom Deputy, K'Aun Wild sent a notice of the hearing to McGrath's last known address and that no mail had been returned as undeliverable.  <u>See</u> Tr. at 2:17-3:9 (Court).  The Court said that it had no reason to believe that McGrath has not received all of the necessary materials for his case.  <u>See</u> Tr. at 3:8-11 (Court).

The Court and the Defendants took up the MTR first.  The City Defendants kept to their argument brief, arguing only that their attorneys obtained their informed consent for the removal and that every Defendant in the case consented to the removal.  <u>See</u> Tr. at 5:1-13 (Hults).  The City Defendants said that their attorneys have authority to consent to removal on their behalf under rule 11 of the Federal Rules of Civil Procedure.  <u>See</u> Tr. at 4:21-5:4 (Hults).  The Court said that it would deny the MTR, noting that, "as long as counsel have consented to removal, . . . that's sufficient."  Tr. at 6:10-15 (Court).

Next, the Court and the parties addressed the MTD.  Forney reiterated the four arguments from the MTD: (i) qualified immunity precludes McGrath's § 1983 claims; (ii) the Court should dismiss McGrath's "breach of contract and duty of good faith," "violation of the Fourth Amendment," "wrongful prosecution and defamation," "professional misconduct," and "prohibited labor practices" claims, because she owed no duty to McGrath as counsel for the opposing party in his case; (iii) McGrath failed to alleged any of the elements of defamation in

---

[13]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

[14]McGrath was pro se at the time of the hearing.

the Complaint; and (iv) McGrath violated rule 4(m) when he failed to timely serve her with the Complaint, Tr. at 8:19-10:18 (Campbell).   Forney clarified that McGrath served her with the Complaint on May 14, 2014 -- 125 days after filing the Complaint.   See Tr. at 10:4-21 (Campbell).  The Court said that, normally, a party will move to dismiss when the plaintiff never served the defendant with a complaint; the Court asked Forney whether she had any case law on situations where the plaintiff serves a defendant a complaint, but does so in an untimely manner. See Tr. at 10:22-11:6 (Court).  Forney said that she did not.  See Tr. at 11:7-16 (Court).  The Court said that it was inclined to grant the MTD.  See Tr. at 14:7-13 (Court).

## LAW REGARDING MOTIONS TO DISMISS UNDER RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss.");  Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(citations omitted).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions where: (i) the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008)); and (ii) where the facts establishing the affirmative defense are apparent on the face of the complaint, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.  If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").   The defense of limitations is the affirmative defense most likely to be established by the uncontroverted facts in the complaint. See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure: Civil § 1277 (3d ed. 2014).  If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6).  See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.). The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion.   Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th

Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the complaint or in amendments to it, facts establishing an exception to the affirmative defense).  It appears, from case law in several circuits, that the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by refraining from pleading specific or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243, 251 (2d Cir. 1999); Honeycutt v. Mitchell, No. CIV 08-0140 W, 2008 WL 3833472 (W.D. Okla. Aug. 15, 2008)(West, J.), and, although the Tenth Circuit has not squarely addressed this practice, the Court has permitted it, see Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1235-36 (D.N.M. 2014)(Browning, J.).

## LAW REGARDING REMOVAL AND REMAND

If a civil action filed in state court satisfies the requirements for original federal jurisdiction -- meaning, most commonly, federal-question or diversity jurisdiction -- the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  See Huffman v. Saul Holdings LP, 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court . . . .")(quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)).  In a case with multiple defendants, there must be unanimous consent to removal; any one defendant may spoil removal and keep the case in state court.  See 28 U.S.C. § 1446(b)(2)(A).  Only true defendants have removal rights: plaintiffs

defending counterclaims and third-party defendants may not remove an action,[15] and their

consent is not required for removal if all the true defendants consent.  See Hamilton v. Aetna

_____

[15]This view is well-established with regard to plaintiffs defending counterclaims, but is an open question in the Tenth Circuit with regard to third-party defendants.  The better view, and the majority view, however, is that "defendants" as used in the removal statute refers to true defendants and not to third-party defendants.  The Court wrote in Wiatt v. State Farm Insurance Co., 560 F. Supp. 2d 1068 (D.N.M. 2007)(Browning, J.):

> With respect to third-party defendants, courts take various views on whether they may remove cases.  See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d 1237, 1239 (D. Colo. 2006)(citing Monmouth-Ocean Collection Serv., Inc. v. Klor, 46 F. Supp. 2d 385 (D.N.J. 1999)).  28 U.S.C. § 1441(a) permits the removal of a civil action of which the district courts of the United States have original jurisdiction "by the defendant or the defendants."  The majority view is that third-party defendants are not "defendants" within the meaning of § 1441(a).  See First Nat. Bank of Pulaski v. Curry, 301 F.3d 456, 461-62 (6th Cir. 2002); James Wm. Moore, Moore's Federal Practice § 107.11[1][b][iv] ("[T]hird-party defendants are not *defendants* within the meaning of the removal statute." (emphasis in original)).  Other justifications for opposing third-party defendant removal are that it would force a plaintiff to litigate in a federal court that he did not choose and to which his adversary originally could not have removed, and that allowing removal would expand jurisdiction of federal courts in contravention of the strictly construed statutory limits on the right to removal.  See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239.  Proponents of third-party removal, however, assert that the term "defendant" under § 1441(a) does not necessarily exclude third-party defendants, who, like other defendants, have been brought into court involuntarily and may have an interest in having a federal forum.

> . . . .

> Sister districts within the United States Court of Appeals for the Tenth Circuit have routinely held that third-party defendants that a defendant/third-party plaintiff impleads may not remove cases.  See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239-40; Menninger Clinic Inc. v. Schilly, No. CIV 92-4104, 1992 WL 373927, at *1-2 (D. Kan. Nov. 23, 1992); Radio Shack Franchise Dep't v. Williams, 804 F. Supp. at 152-53; Elkhart Co-op Equity Exch. v. Day, 716 F. Supp. 1384, 1385, 1387 (D. Kan. 1989)(cross-claim).  These cases, however, involved the application of 28 U.S.C. § 1441(c) and not a plaintiff/counter-defendant impleading the third-party defendant under Rule 14(b).  Arguably, some of the rationales for opposing third-party defendant removal may not apply where the plaintiff impleads a third-party defendant, because the plaintiff is the party permissively joining the third-party defendant, and in this scenario, the third-party defendant is more like a traditional defendant -- a party antagonistic to

Life & Cas. Co., 5 F.3d 642 (2d Cir. 1993); Wiatt v. State Farm Ins. Co., 560 F. Supp. 2d 1068 (D.N.M. 2007)(Browning, J.).

To remove a case based on diversity, the diverse defendant must demonstrate that all of the usual prerequisites of diversity jurisdiction are satisfied. Under 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00. See 28 U.S.C. § 1332(a); Johnson v. Rodrigues, 226 F.3d 1103, 1107 (10th Cir. 2000). Diversity between the parties must be complete. See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004). In addition to original jurisdiction's requirements, § 1441(b)(2) lays out the "forum-defendant rule," which provides that a case may

---

the plaintiff. See Moore, supra, § 107.ll [1][b][iv] ("The better view . . . is that third-party claims are not removable, because only a party defending against claims asserted by a plaintiff ought to be able to remove."). At least one court, however, has held that a third-party defendant [that] a plaintiff/counter-defendant impleads cannot remove, because the third-party defendant is not a defendant within the meaning of § 1441. See Garnas v. Am. Farm Equip. Co., 502 F. Supp. 349, 351 n.7 (D.N.D. 1980)(based on pre-1990 amendment to section 1441(c)).

The Tenth Circuit has not spoken definitively on the propriety of third-party removal. See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1240. It is therefore an open question in this circuit whether a third-party defendant, who the plaintiff impleaded, may remove a case.

560 F. Supp. 2d at 1076 (citations omitted). The Court ultimately concluded that it "need not resolve this issue, because assuming, without deciding, that a third-party defendant impleaded under rule 14(b) may attempt removal, Allstate has not met its burden to establish the Court's diversity jurisdiction over the claims against it." 560 F. Supp. 2d at 1078. In any case, the Court has since held that third-party may not remove a case. See Mach v. Triple D Supply, LLC, 773 F. Supp. 2d 1018, 1051 (D.N.M. 2011)(Browning, J.)("The Supreme Court has already established that cross-defendants may not remand; there is no valid distinction between cross-defendants, counter-defendants, and third-party defendants for the purposes of 28 U.S.C. § 1441(a). The Court thus agrees with those courts that have held only original defendants may remove cases under 28 U.S.C. § 1441(a).").

not be removed on the basis of diversity jurisdiction if any defendant is a citizen of the state in which the state-court action was brought.

> [W]e note that § 1441(b)(2) -- the so-called forum-defendant rule -- provides as a separate requirement that "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013)(unpublished)[16](alterations in original) (quoting 28 U.S.C. § 1441(b)(2)).  The forum-defendant rule applies only to cases removed under diversity jurisdiction; a defendant may remove a case brought against it in its home state on the basis of federal-question jurisdiction.  See 28 U.S.C. § 1441(b).  Last, a defendant cannot remove a case if it began with a nondiverse party or a forum-citizen defendant, and only later came to satisfy the requirements of removal jurisdiction, unless: (i) the plaintiff voluntarily dismissed the removal-spoiling party, see DeBry v. Transamerica Corp., 601 F.2d 480, 488 (10th

---

[16]Brazell v. White is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that Brazell v. White; Browning v. American Family Mutual Insurance Co., 396 F. App'x 496 (10th Cir. 2010)(unpublished); Jenkins v. MTGLQ Investors, 218 F. App'x. 719 (10th Cir. 2007) (unpublished); Nerad v. AstraZeneca Pharmaceuticals, Inc., 203 F. App'x 911 (10th Cir. 2006) (unpublished); Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592 (10th Cir. 2000)(unpublished); Watkins v. Terminix International Co., Nos. CIV 96-3053, 96-3078, 1997 WL 34676226 (10th Cir. May 22, 1997)(per curiam)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion.

Cir. 1979); <u>Flores-Duenas v. Briones</u>, No. CIV 0660 JB/CG, 2013 WL 6503537, at *12 n.6, *26 (D.N.M. Dec. 1, 2013)(Browning, J.)(describing the operation of the "voluntary-involuntary" rule);[17] or (ii) the plaintiff fraudulently joined or procedurally misjoined the removal-spoiling party. The Court describes these doctrines below.

1.    **The Presumption Against Removal.**

Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome. <u>See Fajen v. Found. Reserve Ins. Co.</u>, 683 F.2d 331, 333 (10th Cir. 1982); <u>Martin v. Franklin Capital Corp.</u>, 251 F.3d at 1290; <u>Bonadeo v. Lujan</u>, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *4 (D.N.M. April 30, 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand."). The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence." <u>McPhail v. Deere & Co.</u>, 529 F.3d at 953. <u>See Bonadeo v. Lujan</u>, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal."). Because federal courts are courts of limited jurisdiction, the Tenth Circuit has ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record." <u>Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.</u>, 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished), <u>abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens</u>, 135 S. Ct. at 547. On the other

---

[17]The Tenth Circuit explained:

> The general effect of the [voluntary-involuntary] test is that a cause cannot be removed where the removability is a result of some development other than a voluntary act of plaintiff. The cause cannot be removed as a result of evidence from the defendant or the result of a court order rendered on the merits of the case.

<u>DeBry v. Transamerica Corp.</u>, 601 F.2d at 488 (citation omitted).

hand, this strict construction and presumption against removal should not be interpreted as a hostility toward removal cases in the federal courts.  See McEntire v. Kmart Corp., 2010 WL 553443, at *2 (citing Bonadeo v. Lujan, 2009 WL 1324119, at *12 ("Strict construction does not mean judicial hostility toward removal.  Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the name of strict construction.")).

"It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals."  Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)).  "All doubts are to be resolved against removal."  Fajen v. Found. Reserve Ins. Co., 683 F.2d at 333.  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

### 2.     Removal's Procedural Requirements.

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed."  Thompson v. Intel Corp., 2012 WL 3860748, at *5.  A removal that does not comply with the express statutory requirements is defective, and the Court must, upon request, remand the case to state court.  See Huffman v. Saul Holdings LP, 194 F.3d at 1077.  See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The Right to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing

a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  Such notice of removal is proper if filed within thirty days from the date when the case qualifies for federal jurisdiction.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b).  The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available.  Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998).  The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.[18]

After the notice of removal is filed, all state-court proceedings are automatically stayed, and the other defendants in the case -- if not all defendants joined in the removal -- have thirty days to consent to the removal of the action.  See 28 U.S.C. § 1446(b)(2).  "When a civil action is removed solely under section 1441(a) [the standard removal statute, which excludes multiparty, multiforum jurisdiction], all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  All defendants' failure to consent to removal will result in remand.  The unanimity rule applies to all defendants, whether they are required parties under rule 19 or merely proper parties under rule 20.  Defendants who have not been served, however, need not join in removal.  See Kiro v. Moore, 229 F.R.D. 228, 230-32 (D.N.M. 2005)(Browning, J.).

---

[18]Congress clarified removal jurisdiction and procedures in the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 ("Act"). Thompson v. Intel Corp., 2012 WL 3860748, at *12 n.5 (discussing the Act).

Section 1447(c) permits the district court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  The Supreme Court has stated:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005).  The Tenth Circuit has limited district courts' discretion to impose costs and fees to those cases in which the removal was objectively unreasonable.  See Garret v. Cook, 652 F.3d 1249, 1254 (10th Cir. 2011)("[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

### 3. Amendment of the Notice of Removal.

In Caterpillar, Inc. v. Lewis, the Supreme Court held that a defect in subject-matter jurisdiction cured before entry of judgment did not warrant reversal or remand to state court.  See 519 U.S. at 70-78.  Citing Caterpillar, Inc. v. Lewis, the Tenth Circuit has held that "a defect in removal procedure, standing alone, is not sufficient to warrant vacating judgment and remand to state court if subject matter jurisdiction existed in the federal court."  Browning v. Am. Family Mut. Ins. Co., 396 F. App'x 496, 505-06 (10th Cir. 2010)(unpublished).  In McMahon v. Bunn-O-Matic Corp., 150 F.3d 651 (7th Cir. 1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit noticed, on appeal, defects in the notice of removal, including that the notice failed to properly allege diversity of citizenship.  See 150 F.3d at 653 ("As it happens, no one paid attention to subject-matter jurisdiction . . . .").  The Seventh Circuit

- 26 -

nevertheless permitted the defective notice of removal to be amended on appeal to properly establish subject-matter jurisdiction.  See 150 F.3d at 653-54.

The Tenth Circuit has allowed defendants to remedy defects in their petition or notice of removal.  See Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir. 2007) (unpublished)(granting unopposed motion to amend notice of removal to properly allege jurisdictional facts); Watkins v. Terminix Int'l Co., Nos. CIV 96-3053, 96-3078, 1997 WL 34676226, at *2 (10th Cir. May 22, 1997)(per curiam)(unpublished)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts); Lopez v. Denver & Rio Grande W. R.R. Co., 277 F.2d 830, 832 (10th Cir. 1960) ("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present.").  The Tenth Circuit has further reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window had expired, when the defendant made simple errors in its jurisdictional allegations, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts."  Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968).  The Tenth Circuit has noted that a simple error in a jurisdictional allegation includes failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship.  See Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301.  In McEntire v. Kmart Corp., when faced with insufficient allegations in the notice of removal -- allegations of "residence" not "citizenship" -- the Court granted the

defendants leave to amend their notice of removal to cure the errors in some of the "formalistic

technical requirements."  2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co.,

390 F.2d at 300-02).  Further, in Thompson v. Intel Corp., the Court permitted the defendant,

Intel Corp., to amend its notice of removal to include missing jurisdictional elements, including

evidence that its principal place of business and corporate headquarters -- the center of Intel

Corp.'s direction, control, and coordination of activities -- is out of state, so that the diversity

requirements were met.  See 2012 WL 3860748, at *1.

There are limits to the defects that an amended notice of removal may cure, however, as

Professors Charles Alan Wright and Arthur R. Miller explain:

> [A]n amendment of the removal notice may seek to accomplish any of several
> objectives: It may correct an imperfect statement of citizenship, state the
> previously articulated grounds more fully, or clarify the jurisdictional amount.  In
> most circumstances, however, defendants may not add completely new grounds
> for removal or furnish missing allegations, even if the court rejects the
> first-proffered basis of removal, and the court will not, on its own motion, retain
> jurisdiction on the basis of a ground that is present but that defendants have not
> relied upon.

14 C. Wright & A. Miller, Federal Practice and Procedure § 3733, at 651-659 (4th ed.

2009)(footnotes omitted).  Professor Moore has similarly recognized: "[A]mendment may be

permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction,

but not to add a new basis for removal jurisdiction."  16 J. Moore, D. Coquillette, G. Joseph, S.

Schreiber, G. Vairo, & C. Varner, Moore's Federal Practice § 107.30[2][a][iv], at 107-317 to -18

(3d ed. 2013).  Thus, where diversity jurisdiction is asserted as a basis for removal of an action to

federal court, the district court may permit the removing defendant to amend its removal notice,

if necessary, to fully allege facts which satisfy the requirements of diversity jurisdiction by a

preponderance of the evidence.  See Carrillo v. MCS Indus., Inc., No. CIV 12-0573, 2012 WL

5378300, at *14 (D.N.M. Oct. 15, 2012)(Browning, J.)(permitting party to amend its notice of

removal when the removing party did "not assert[] a new basis for jurisdiction, or a new allegation not present in its Notice of Removal; rather, the . . . Amended Notice of Removal provide[d] greater detail regarding the same basis for jurisdiction asserted in the . . . Notice of Removal"). Cf. New Mexico ex rel. Balderas v. Valley Meat Co., No. CIV 14-1100 JB/KBM, 2015 WL 3544288, at *25 (D.N.M. May 20, 2015)(Browning, J.)(denying amendment when it sought to assert a new jurisdictional basis that the notice of removal did not raise).

       4.      **Fraudulent Joinder.**

      A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction. See Am. Nat'l Bank & Trust Co. v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991); Hernandez v. Menlo Logistics, Inc., No. CIV 12-0907 JB/WPL, 2013 WL 5934411, at *14-17 (D.N.M. Sept. 30, 2013)(Browning, J.). A defendant may remove on the basis of fraudulent joinder either while the nondiverse party is still joined or after it is dismissed from the case -- the doctrine can thus function as an exception to either complete diversity or the voluntary-involuntary rule. "'[A] fraudulent joinder analysis [is] a jurisdictional inquiry,'" Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1214 (quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004)), and, thus, the Tenth Circuit instructs that the district court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted). "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent." Baeza v. Tibbetts, No. CIV 06-0407 MV/WPL, 2006 WL 2863486, at *3 (D.N.M. July 7, 2006)(Vazquez, J.). The Supreme Court has stated: "Merely to traverse the allegations upon

which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith." Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914). The Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006) (unpublished).

The party asserting fraudulent joinder bears the burden of proof. See Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(unpublished)("The case law places a heavy burden on the party asserting fraudulent joinder."). "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.). Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years earlier in Smoot v. Chicago, Rock Island & Pacific Railroad Co., 378 F.2d 879 (10th Cir. 1967). The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence." Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882.

Actual fraud -- <u>e.g.</u>, a plaintiff colluding with a nondiverse defendant to defeat removal[19] -- suffices to establish fraudulent joinder, but it is not required.  <u>See</u> <u>McLeod v. Cities Serv. Gas Co.</u>, 233 F.2d 242, 246 (10th Cir. 1956)("[C]ollusion in joining a resident defendant for the sole purpose of preventing removal . . . may be shown by any means available.").  In <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, the Tenth Circuit stated two other bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is a patent sham"; or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists."  378 F.2d at 882 (quoting <u>Dodd v. Fawcett Pubs., Inc.</u>, 329 F.2d 82, 85 (10th Cir. 1964)).  In <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, the Tenth Circuit found fraudulent joinder, because the joined party's non-liability was "established with complete certainty upon undisputed evidence."  378 F.2d at 882.  "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."  <u>Smoot v. Chi., Rock Island & Pac. R.R. Co.</u>, 378 F.2d at 882.  In <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, the plaintiff died when his car collided with a freight train.  <u>See</u> 378 F.2d at 881.  The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant.  <u>See</u> 378 F.2d at 881.  It was undisputed that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him."  378 F.2d at 881.

---

[19]Collusion might look something like this: a plaintiff names a nondiverse defendant under a highly dubious theory of liability; the plaintiff contacts the defendant and offers to dismiss the case at the end of the one-year limitation, <u>see</u> 28 U.S.C. § 1446(c), if the defendant agrees not to move to dismiss before the one-year mark; and the defendant agrees to the arrangement to save litigation costs, as well as to avoid any slim chance that the court decides to recognize the plaintiff's theory of liability against it.

In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the burden of proof for fraudulent joinder, two of which are from the United States Court of Appeals for the Fifth Circuit.  In <u>Montano v. Allstate Indemnity Co.</u>, the Tenth Circuit quoted favorably <u>Hart v. Bayer Corp.</u>, 199 F.3d 239 (5th Cir. 2000), which states:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party], in state court.  In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

<u>Montano v. Allstate Indemnity Co.</u>, 211 F.3d 1278, 2000 WL 525592, at *4-5 (alterations in original)(quoting <u>Hart v. Bayer Corp.</u>, 199 F.3d at 246)(internal quotation marks omitted).  The Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced."  <u>Montano v. Allstate Indemnity Co.</u>, 211 F.3d 1278, 2000 WL 525592, at *2.  The Tenth Circuit in <u>Montano v. Allstate Indemnity Co.</u> also quoted from <u>Batoff v. State Farm Insurance Co.</u>, 977 F.2d 848 (3d Cir. 1992), which states: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."  977 F.2d at 853.

In <u>Nerad v. AstraZeneca Pharmaceuticals, Inc.</u>, the Tenth Circuit adopted a different articulation of the burden of proof.  The Tenth Circuit stated that, where fraudulent joinder is asserted, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant."  203 F. App'x at 913 (citing <u>Badon v. RJR Nabisco, Inc.</u>, 224 F.3d 382, 393 (5th Cir. 2000)).  The Tenth Circuit explained

that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law."  203 F. App'x at 913.

The Fifth Circuit recognized the inconsistencies in various articulations of the standard for fraudulent joinder and directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard.  The test has been stated by this court in various terms, even within the same opinion.  For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999),] opinion states,
>
>> To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.
>
> 181 F.3d at 699 (emphasis added)(citing Burden v. Gen. Dynamics Corp., 60 F.3d 213, 317 (5th Cir. 1995)).  The Griggs opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court."  181 F.3d at 699 (emphasis added).  Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must demonstrate . . . the *absence of any possibility* that the opposing party has stated a claim under state law."  16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added).  It then comments: "The ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved."  Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphases in original).  The Fifth Circuit has settled upon this phrasing:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").

In Zufelt v. Isuzu Motors America, LCC, 727 F. Supp. 2d 1117, 1124 (D.N.M. 2009)(Browning, J.), the Court addressed the standard that courts should use when addressing fraudulent joinder and concluded that, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined.  727 F. Supp. 2d at 1124-25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5).  The Court explained:

> [T]his District has consistently adopted the "possibility" standard when assessing fraudulent joinder claims.  See Allen v. Allstate Ins. Co., No. CIV 08-0733, 2008 WL 6045497 (D.N.M. Oct. 31, 2008)(Browning, J.)(holding that the claims asserted against the non-diverse defendant were "possibly viable under New Mexico law, and . . . sufficient to preclude federal jurisdiction"); Baeza v. Tibbetts, 2006 U.S. Dist. LEXIS 95317, at *11, 2006 WL 2863486 (stating that "[r]emand is required if any one of the claims against [the defendant] is possibly viable"); Provencio v. Mendez, No. CIV 05-623, 2005 U.S. Dist. LEXIS 39012, at *25, 2005 WL 3662957 (D.N.M. Sept. 29, 2005)(Browning, J.)(stating that "there must be no possibility the [p]laintiffs have a claim against [the non-diverse defendant]"); Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (stating that, to defeat removal jurisdiction, "[t]he plaintiff need only demonstrate the possibility of the right to relief").  This Court, in Couch v. Astec Indus., Inc., noted with approval the language of the United States Court of Appeals for the Eleventh Circuit, which states that "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."  Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998))(emphasis in original).

Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1229.

In Brazell v. Waite, the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further

elaborate on that burden.  2013 WL 2398893, at *3 (citing Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964); Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

In 2013, the Tenth Circuit published its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"  Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013)(Briscoe, C.J., joined by Seymour & Bacharach, JJ.)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)).  In Dutcher v. Matheson, the Tenth Circuit reviewed a district court's holding that it had diversity jurisdiction over a case where Utah citizens sued ReconTrust, a Texas-based national bank, Stuart T. Matheson, a Utah citizen, and Matheson's law firm.  See 733 F.3d at 983, 987.  The plaintiffs alleged that Matheson and his law firm enabled ReconTrust to conduct an illegal nonjudicial foreclosure by holding the foreclosure sales on behalf of the Texas-based bank.  See 733 F.3d at 983.  The defendants removed the case to federal court and alleged that the plaintiffs fraudulently joined the Utah defendants.  See 733 F.3d at 983.  The district court agreed, finding that, under Utah law, "an attorney cannot be held liable to a non-client absent fraud, collusion or privity of contract."  733 F.3d at 988.  The Tenth Circuit disagreed with that characterization of Utah law, finding instead that, in the case on which the defendants relied, the Utah Supreme Court "has simply limited the circumstances in which a lawyer owes a duty of care to non-clients from actions arising out of the provision of legal services."  733 F.3d at 988.  In rejecting the claim of fraudulent joinder, the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson and his law firm.  Or even that Matheson and his law firm are not somehow

fraudulently joined.  But the defendants needed to clear a high hurdle to prove something they have yet to prove, i.e., fraudulent joinder.

733 F.3d at 989.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder, except to say that it is "a high hurdle."  733 F.3d at 989.  It quoted, however, Cuevas v. BAC Home Loans Servicing, LP, a Fifth Circuit opinion that repeats the clarified standard from the Smallwood v. Illinois Central Railroad Co. case.  See Dutcher v. Matheson, 733 F.3d at 988 (quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249).

> Under the second way, the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  [Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573.]  If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of all defendants.  There is no improper joinder if the defendants' showing compels the same result for the resident and nonresident defendants, because this simply means that the plaintiff's case is ill founded as to all of the defendants.  Such a defense is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the in-state defendant.

Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (emphasis in original)(citations omitted)(internal quotation marks omitted).  Based on the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases, the Tenth Circuit would likely approve this additional explanation of the fraudulent joinder standard.  Accordingly, the Court will use the following standard for fraudulent joinder: whether the defendant has demonstrated that there is no possibility that the plaintiff will obtain a judgment against an in-state defendant.  Cf. Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1124-25 (concluding that fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined).  No case sets forth the burden of proof that

applies to (much rarer) allegations of actual fraud, such as plaintiff-defendant collusion, see supra note 19 and accompanying text, but the Court concludes that the clear-and-convincing standard -- the usual standard for fraud -- is appropriate, see, e.g., United States v. Thompson, 279 F.2d 165, 167 (10th Cir. 1960)("An allegation of fraud is a serious matter; it is never presumed and must be proved by clear and convincing evidence." (citations omitted)).

A less-clear issue -- at least in other courts -- is whether fraudulent joinder permits the removal of actions that have been pending in state court for over a year.  Section 1446(c)(1) provides: "A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action . . . ." 28 U.S.C. § 1446(c)(1).  The two district court cases within the Tenth Circuit to address the issue both concluded that fraudulent joinder does not permit the removal of actions that have been pending in state court for over a year, but the district courts issued those opinions before Congress amended § 1446 in 2012 to add the remainder (the omitted portion) of the sentence quoted earlier in this paragraph: "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  See Chidester v. Kaz, Inc., No. CIV 08-0776 TCK/PJC, 2009 WL 2588866, at *3 (N.D. Okla. Aug. 19, 2009)(Kern, J.); Caudill v. Ford Motor Co., 271 F. Supp. 2d 1324, 1327 (N.D. Okla. 2003)(Eagan, J.).  Outside the Tenth Circuit, the Courts of Appeals have said little, and district courts appear more-or-less evenly split on the issue, with some holding that a case can be removed on the basis of fraudulent joinder after the one-year mark, see Hardy v. Ajax Magnathermic Corp., 122 F. Supp. 2d 757, 759 (W.D. Ky. 2000); Johnson v. Heublein, Inc., 982 F. Supp. 438, 444-45 (S.D. Miss. 1997); Barnett v. Sylacauga Autoplex, 973 F. Supp. 1358, 1367 (N.D. Ala. 1997); Leslie v. BancTec Serv. Corp., 928 F. Supp. 341, 346 (S.D.N.Y. 1996);

Morrison v. Nat'l Ben. Life Ins. Co., 889 F. Supp. 945, 950-51 (S.D. Miss. 1995); Saunders v. Wire Rope Corp., 777 F. Supp. 1281, 1282-83 (E.D. Va. 1991); Greer v. Skilcraft, 704 F. Supp. 1570, 1582-83 (N.D. Ala. 1989), and others concluding that the fraudulent-joinder doctrine bows to the one-year limitation, see Codner v. Am. Home Prods. Corp., 123 F. Supp. 2d 1272, 1274 (W.D. Okla. 2000); Hattaway v. Engelhard Corp., 998 F. Supp. 1479, 1481-82 (M.D. Ga. 1998); Russaw v. Voyager Life Ins. Co., 921 F. Supp. 723, 724-25 (M.D. Ala. 1996); Zumas v. Owens-Corning Fiberglas Corp., 907 F. Supp. 131, 133-34 (D. Md. 1995); Price v. Messer, 872 F. Supp. 317 (S.D. W. Va. 1995); Norman v. Sundance Spas, Inc., 844 F. Supp. 355, 356-57 (W.D. Ky. 1994); Brock v. Syntex Labs., Inc., 791 F. Supp. 721, 722-23 (E.D. Tenn. 1992); Cofer v. Horsehead Research & Dev. Co., 805 F. Supp. 541, 543-44 (E.D. Tenn. 1991); O'Rourke v. Communique Telecomms., Inc., 715 F. Supp. 828, 829 (E.D. Mich. 1989). Again, however, all of these cases came before the addition of 28 U.S.C. § 1446(c)(1), which grafted a bad-faith exception to the one-year limitation, discussed at length later in this opinion. In Aguayo v. AMCO Insurance Co., 59 F. Supp. 3d 1225, 1256 (D.N.M. Oct. 31, 2014)(Browning, J.), the Court concluded that, because § 1446(c)(1)'s bad faith exception is procedural, rather than jurisdictional, see 59 F. Supp. 3d at 1270 (noting that Congress amended the one-year limitation to clarify that it is procedural by modeling it after the United States Court of Appeals for the Fifth Circuit's interpretation in Tedford v. Warner-Lambert Co., 327 F.3d 423, 427 (5th Cir. 2003)), the exception extends the applicability of the fraudulent joinder doctrine past one year. See 59 F. Supp. 3d at 1256.

> The Court concludes that the addition of the bad-faith exception to the one-year limitation clarifies that the one-year limitation is procedural, rather than jurisdictional, and, thus, extends the applicability of fraudulent joinder doctrine past the one-year mark. Thus, defendants may remove a case on fraudulent joinder grounds even after it has been pending in state court for more than one year.

59 F. Supp. 3d at 1256.

Another less-than-clear issue -- at least, in other courts -- that concerns fraudulent joinder is whether it creates an exception to the forum-defendant rule -- which provides that even an action with complete diversity cannot be removed if any defendant is a citizen of the forum state -- in addition to creating an exception to the rule of complete diversity.  See 28 U.S.C. § 1441(b)(2).   Courts and commentators recite fraudulent joinder as involving the legally unjustifiable naming of a nondiverse party, a party who defeats complete diversity, or a diversity-spoiling party, but, before the Court's opinion in Aguayo v. AMCO Insurance Co., no case addressed whether the doctrine extends to the wrongful naming of a diverse party whose inclusion in the lawsuit nonetheless defeats removal because of the party's status as a citizen of the forum state.  See Brazell v. Waite, 525 F. App'x at 884 & n.3 (implying, but not holding or stating clearly, that fraudulent joinder is an exception to the forum-defendant rule, and noting an "apparent lack of ruling from any federal appellate court, and [a] split among district courts, on the issue" (citing Morris v. Nuzzo, 718 F.3d 660, 666 (7th Cir. 2013))); Hernandez v. Cooper Tire & Rubber Co., No. CIV 12-1399 JWL, 2013 WL 141648, at *2 n.2 (D. Kan. Jan. 11, 2013)("Some courts have extended the fraudulent joinder doctrine to diverse, in-state defendants in light of the forum defendant rule . . . ."  (citing Morris v. Mid-Century Ins. Co., No. CIV 12-0578 SEB/DML, 2012 WL 3683540, at *5 (S.D. Ind. Aug. 24, 2012), vacated and remanded sub nom. Morris v. Nuzzo, 718 F.3d 660)).   Although the policy justifications behind the fraudulent-joinder doctrine would seem to apply just as strongly to the forum-defendant rule as they do to complete diversity, there is an important legal distinction between the two requirements: complete diversity is a requirement of original subject-matter jurisdiction and is found in § 1332; the forum-defendant rule is unique to removal jurisdiction -- it does not apply to

cases filed in federal court in the first instance -- and is found in § 1441.  See 28 U.S.C. §§ 1332(a), 1441(b)(2).  Fraudulent joinder, however, applies only in the removal context and does no work in cases filed in federal court in the first instance.  Thus, in <u>Aguayo v. AMCO Insurance Co.</u>, the Court concluded that the fraudulent-joinder doctrine applies equally to joining non-diverse parties as it does to joining forum-citizen defendants.  See 59 F. Supp. 3d at 1257.

> As such, the Court sees no principled reason to limit fraudulent-joinder doctrine's application to the joining of nondiverse parties to defeat complete diversity, while excluding the functionally identical practice of fraudulently joining forum-citizen defendants to defeat the forum-defendant rule.  The Court, therefore, construes fraudulent-joinder doctrine as permitting removal whenever a plaintiff fraudulently joins a party that defeats removal jurisdiction, whether that defeat comes by way of complete diversity or the forum-defendant rule.

<u>Aguayo v. AMCO Ins. Co.</u>, 59 F. Supp. 3d at 1257.

A district court's order to remand based on a finding of fraudulent joinder is not reviewable by the Tenth Circuit.  See <u>Nerad v. AstraZeneca Pharms., Inc.</u>, 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from reviewing the order).  The fraudulent joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry.  See <u>Albert v. Smith's Food & Drug Ctrs., Inc.</u>, 356 F.3d at 1247.

### 5. <u>Procedural Misjoinder</u>.[20]

Rule 20 of the Federal Rules of Civil Procedure provides:

---

[20]The Court refers to the doctrine as "procedural misjoinder," rather than "fraudulent misjoinder," because of the confusion that the word "fraudulent" has caused in the fraudulent joinder context.  As the Honorable Martha A. Vasquez, then-Chief District Judge for the United States District Court for the District of New Mexico, once explained: "Fraudulent joinder is a term of art.  It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant." <u>Baeza v. Tibbetts</u>, No. CIV 06-0407 MV/WPL, 2006 WL 2863486, at *1 n.1 (D.N.M. July 7, 2006)(Vasquez, J.).  The Court will refer to the doctrine as "procedural misjoinder" to avoid expanding that confusion.  <u>Flores-Duenas v. Briones</u>, 2013 WL 6503537, at *22 n.8.

    **(a)**    **Persons Who May Join or Be Joined.**

        **(1)**    **Plaintiffs.**  Persons may join in one action as plaintiffs if:

            **(A)**    they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

            **(B)**    any question of law or fact common to all plaintiffs will arise in the action.

        **(2)**    **Defendants.**  Persons -- as well as a vessel, cargo, or other property subject to admiralty process in rem -- may be joined in one action as defendants if:

            **(A)**    any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

            **(B)**    any question of law or fact common to all defendants will arise in the action.

        **(3)**    **Extent of Relief.**  Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded.  The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

Fed. R. Civ. P. 20(a).

"Procedural misjoinder," also known as "fraudulent misjoinder," is a recent development that is related to fraudulent joinder, but distinct from it.  Professor E. Farish Percy of the University of Mississippi School of Law has explained:

        Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a non-diverse or in-state defendant even though the plaintiff has no reasonable procedural basis to join such defendants in one action.  While the traditional fraudulent joinder doctrine inquires into the substantive factual or legal basis for the plaintiff's claim against the jurisdictional spoiler, the fraudulent misjoinder doctrine inquires into the procedural basis for the plaintiff's joinder of

the spoiler.  Most state joinder rules are modeled after the federal joinder rule that authorizes permissive joinder of parties when the claims brought by or against them arise "out of the same transaction, occurrence, or series of transactions or occurrences" and give rise to a common question of law or fact.  Thus, in a case where the joined claims are totally unrelated, a federal district court may find removal jurisdiction pursuant to the fraudulent misjoinder doctrine even though the plaintiff has a reasonable substantive basis for the claim against the jurisdictional spoiler.

E. Farish Percy, Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine, 29

Harv. J.L. & Pub. Pol'y 569, 572 (2006)(footnotes omitted).

The Eleventh Circuit formulated the doctrine in Tapscott v. MS Dealer Service Corp.,

and explained its purpose as follows:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action.  A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."  Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921).

Tapscott v. MS Dealer Serv. Corp., 77 F.3d at 1360 (footnote omitted).

The facts of Tapscott v. MS Dealer Service Corp. illustrate the doctrine's operation.  The

case involved two proposed state-law class actions, joined together in a single case: (i) a class

action in which an Alabama resident alleged that four defendants, including an Alabama

resident, had violated various provisions of Alabama fraud and consumer-protection law in

connection with the "sale of 'service contracts' on automobiles sold and financed in Alabama,"

77 F.3d at 1355; and (ii) a class action in which Alabama alleged three defendants, including

Lowe's Home Centers, a North Carolina resident, had violated Alabama consumer-protection

law in connection with the sale of retail product, see 77 F.3d at 1355.  The second class action

named Lowe's Home Centers as "the putative defendant class representative for a 'merchant'

class."   77 F.3d at 1355.   This unified case matched particular plaintiffs "with particular

defendants against whom they allege individual claims"; as relevant here, the only two class

representatives for the class action were Alabama residents, and they asserted claims only against Lowe's Home Centers.  77 F.3d at 1359-60.

The district court concluded that there was no allegation of joint liability or conspiracy, and that the claims involved in the car-sales class action were "wholly distinct from the alleged transactions involved in the" retail-products class action.  77 F.3d at 1360.  Rather, "[t]he only similarity between" the two classes was that they both alleged violations of Alabama statutory law; "[s]uch commonality on its face [was] insufficient for joinder."  77 F.3d at 1360.  The Eleventh Circuit agreed and explained:

> Although certain putative class representatives may have colorable claims against resident defendants in the putative "automobile" class, these resident defendants have no real connection with the controversy involving [the retail-products plaintiffs and] Lowe's in the putative "merchant" class action.  We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder.  We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.

77 F.3d at 1360.

The procedural misjoinder doctrine's reach outside the Eleventh Circuit is unclear.  The Tenth Circuit recently described the doctrine's status as follows: "It appears that the Fifth Circuit may also accept procedural misjoinder.  No circuit has rejected the doctrine, but the district courts and the commentators are split."  Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739 (citing, for the proposition that the Fifth Circuit accepts the doctrine, Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d at 532-33; In re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002)).  While the Tenth Circuit recognized that "[t]here may be many good reasons to adopt procedural misjoinder," it declined to adopt the doctrine, because it would not have changed the result in that case.  Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739.  See 14B Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 3723, at 867-77 &

n.122 (3d ed. 2009)(confirming the developing doctrine's unclear status).  The Court, however,

has adopted the doctrine and applied it in two cases, although it concluded in both cases that no

procedural misjoinder occurred, and both cases thus resulted in remand.  See Ullman v. Safeway

Ins. Co., 995 F. Supp. 2d 1196 (D.N.M. 2013)(Browning, J.); Flores-Duenas v. Briones, 2013

WL 6503537 at *41.

     **6.**     **The "Bad Faith" Exception to the One-Year Removal Bar for Diversity
Cases.**

     Since 1988, 28 U.S.C. § 1446 has provided that no case that has been pending more than

one year in state court can be removed on the basis of diversity jurisdiction.[21]  On January 6,

2012, Congress put into effect the Federal Courts Jurisdiction and Venue Clarification Act of

2011, Pub. L. No. 112-63, 125 Stat. 760, 762 ("JVCA"), which, among other changes, added a

bad-faith exception to the one-year limitation.  As a result, the current subsection (c) is almost

entirely new; it reads as follows, with the sole sentence of the statute that pre-exists the JVCA

underlined:

     **Requirements; removal based on diversity of citizenship.** --

     **(1)**     A case may not be removed under subsection (b)(3) on the basis of
            jurisdiction conferred by section 1332 more than 1 year after

---

[21]The one-year limitation applies only to standard diversity jurisdiction under 28 U.S.C.
§ 1332(a) and not to class actions removed under § 1332(d), which is a part of the Class Action
Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4-14 ("CAFA").  Although exempting CAFA
from the one-year limitation appears to defy the § 1446(c)(1)'s text, which refers to cases
brought "on the basis of jurisdiction conferred by section 1332," another section of Title 28
clarifies the issue:

     A class action may be removed to a district court of the United States in
     accordance with section 1446 (except that the 1-year limitation under section
     1446(c)(1) shall not apply), without regard to whether any defendant is a citizen
     of the State in which the action is brought, except that such action may be
     removed by any defendant without the consent of all defendants.

28 U.S.C. § 1453(b) (emphasis added).  See Reece v. Bank of N.Y. Mellon, 760 F.3d 771,
775-76 (8th Cir. 2014).

<u>commencement of the action</u>, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

**(2)**    If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that --

    **(A)**    the notice of removal may assert the amount in controversy if the initial pleading seeks --

        **(i)**    nonmonetary relief; or

        **(ii)**    a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

    **(B)**    removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

**(3)**    **(A)**    If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3).[22]

---

[22]Subsection (b)(3) provides:

Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).   The combination of subsection (c)(3)(A)'s new provisions and subsection (b)(3)'s pre-JVCA provisions means that the defendant's thirty-day clock to remove a case starts whenever they have sufficient information -- obtained from anywhere in the case, and not merely from the pleadings or settlement communications -- to conclude that the case meets the amount-in-controversy requirement.

> **(B)** If the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1).

28 U.S.C. § 1446(c) (underscoring added to show pre-JVCA content).

A plaintiff's "bad faith" can manifest itself in either of the two requirements for diversity jurisdiction: (i) a plaintiff can name or retain nondiverse parties or forum-citizen defendants to defeat complete diversity or the forum-defendant rule, respectively; or (ii) it can obfuscate the quantity of damages it seeks for the purpose of defeating the amount-in-controversy requirement.[23]   It is clear how the Court should construe (ii) -- the Tenth Circuit's opinion in McPhail v. Deere & Co. has already fleshed out a detailed framework for analyzing the amount-in-controversy requirement, and the JVCA's legislative history indicates that, far from abrogating McPhail v. Deere & Co., Congress intended § 1446(c)'s amount-in-controversy provisions to codify the approach that the Seventh Circuit chartered in Meridian Securities Insurance Co. v. Sadowski and that the Tenth Circuit advanced in McPhail v. Deere & Co., see Report to the Committee on the Judiciary of the United States House of Representatives § 103, at 15-16, H.R. 112-10 (2011)(citing only two cases under the heading "Amount in controversy and removal timing," McPhail v. Deere & Co. and Meridian Securities Insurance Co. v.

---

[23]As previously explained, it was unclear before the JVCA's passage whether the common-law doctrine of fraudulent joinder creates an exception to the forum-defendant rule or just to complete diversity.  See supra Law Regarding Removal, Remand, Fraudulent Joinder, Procedural Misjoinder, and Bad Faith Part 4.  The bad-faith exception, however, is statutory, and the statute applies to all cases in which "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  The statute's plain meaning thus includes both the bad-faith joinder of a nondiverse party -- which defeats removal jurisdiction by defeating original diversity jurisdiction -- and the bad-faith joinder of a forum-citizen defendant -- which only defeats removal jurisdiction.  See Aguayo v. AMCO Insurance Co., 59 F. Supp. 3d at 1261 n.15 ("Moreover, as the Court is largely writing on a blank slate in interpreting the bad-faith exception, it sees no reason to read in a nonsensical double standard.").

Sadowski, and stating that the JVCA's amendments "follow the lead of [those] cases" (emphasis omitted)).[24]   On the other hand, § 1446(c)'s text says nothing at all about (i), and, before the

_____

[24]The JVCA's legislative history provides:

Section 103(b)(3)(C) of the bill further amends subsection 1446(c) by inserting two new paragraphs, (2) and (3), to address issues relating to uncertainty of the amount in controversy when removal is sought, e.g., when state practice either does not require or permit the plaintiff to assert a sum claimed or allows the plaintiff to recover more than an amount asserted.  Although current practice allows defendants to claim that the jurisdictional amount is satisfied and remove, several issues complicate this practice.

First, circuits have adopted differing standards governing the burden of showing that the amount in controversy is satisfied.  The ''sum claimed'' and ''legal certainty'' standards that govern the amount in controversy requirement when a plaintiff originally files in Federal court have not translated well to removal, where the plaintiff often may not have been permitted to assert in state court a sum claimed or, if asserted, may not be bound by it.  Second, many defendants faced with uncertainty regarding the amount in controversy remove immediately -- rather than waiting until future developments provide needed clarification -- out of a concern that waiting and removing later will result in the removal's being deemed untimely.  In these cases, Federal judges often have difficulty ascertaining the true amount in controversy, particularly when removal is sought before discovery occurs.  As a result, judicial resources may be wasted and the proceedings delayed when little or no objective information accompanies the notice to remove.

Proposed new paragraph 1446(c)(2) allows a defendant to assert an amount in controversy in the notice of removal if the initial pleading seeks non-monetary relief or a money judgment, in instances where the state practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded.  The removal will succeed if the district court finds by a preponderance of the evidence that the amount in controversy exceeds the amount specified in 28 U.S.C. § 1332(a), presently $75,000.

If the defendant lacks information with which to remove within the 30 days after the commencement of the action, the bill adds a new subparagraph 1446(c)(3)(A) to clarify that the defendant's right to take discovery in the state court can be used to help determine the amount in controversy.  If a statement appears in response to discovery or information appears in the record of the state proceedings indicating that the amount in controversy exceeds the threshold amount, then proposed subparagraph 1446(c)(3)(A) deems it to be an ''other paper'' within the meaning of paragraph 1446(b)(3), thereby triggering a 30-day

Court issued its ruling in <u>Aguayo v. AMCO Insurance Co.</u>, no court had attempted to comprehensively define it.  The JVCA's legislative history gives the Court some clue as to the exception's basic nature, but, in answering this question -- what constitutes "bad faith" vis-à-vis improperly joining, or keeping joined, nondiverse parties or forum-citizen defendants -- the Court has staked out its own definition.

---

period in which to remove the action.  The district court must still find by a preponderance of the evidence that the jurisdictional threshold has been met.

In adopting the preponderance standard, new paragraph 1446(c)(2) would follow the lead of recent cases.  See <u>McPhail v. Deere & Co.</u>, 529 F.3d 947 (10th Cir. 2008); <u>Meridian Security Ins. Co. v. Sadowski</u>, 441 F.3d 536 (7th Cir. 2006).  As those cases recognize, defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met.  Discovery may be taken with regard to that question.  In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies.  If the defendant establishes by a preponderance of the evidence that the amount exceeds $75,000, the defendant, as proponent of Federal jurisdiction, will have met the burden of establishing jurisdictional facts.

Under proposed subparagraph 1446(c)(3)(B), if the notice of removal is filed more than one year after the commencement of the action, and a finding is made that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding would be deemed bad faith under paragraph (1).

Section 103(b)(4)(A) of the bill inserts a heading for subsection 1446(d).  Section 103(b)(4)(B) makes a technical amendment replacing ''thirty'' with ''30'' each place it appears in section 1446.  Section 103(b)(4)(C) strikes current subsection (e) (a criminal removal provision, which is now codified as part of new section 1454).  Section 103(b)(4)(D) redesignates current subsection (f) as new subsection (e), and inserts a new heading.

<u>Report to the Committee on the Judiciary of the United States House of Representatives</u> § 103, at 15, H.R. 112-10 (2011).
District courts in other Circuits may need to grapple with the extent to which the JVCA codifies the <u>McPhail v. Deere & Co.</u> approach.  The Court, however, is in the Tenth Circuit, and <u>McPhail v. Deere & Co.</u> binds it unless intervening statute or Supreme Court case law invalidates the holding.  The JVCA's legislative history makes it clear that <u>McPhail v. Deere & Co.</u> remains intact.

In Aguayo v. AMCO Insurance Co., the Court became the first federal court to comprehensively construe the new § 1446(c).  There, the Court concluded that the bad-faith exception sets forth a two-step standard.  See Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d at 1262.

> [T]he Court construes the bad-faith exception as a two-step standard.  First, the Court inquires whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera.  Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith.  Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession that establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court.  The defendant may introduce direct evidence of the plaintiff's bad faith at this stage -- e.g., electronic mail transmissions in which the plaintiff states that he or she is only keeping the removal spoiler joined to defeat removal -- but will not receive discovery or an evidentiary hearing in federal court to obtain such evidence.

Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d at 1262-63.

## LAW REGARDING SERVICE OF PROCESS

Rule 4(m) of the Federal Rules of Civil Procedure requires a summons to be served within 120 days after the complaint is filed.

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specific time.  But, if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  The burden of establishing validity of service is on the plaintiff.  See FDIC v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992).  In 1993, Congress amended former rule 4(m) and "broaden[ed] the district court's discretion [to permit untimely service of process] by allowing it to extend the time for service even when the plaintiff has not shown good cause." Espinoza v. United States, 52 F.3d 838, 840-41 (10th Cir. 1995).

"A district court abuses its discretion [in deciding whether to dismiss a case for untimely service of process] if its decision is arbitrary, capricious, or whimsical."  Smyers v. Cnty. of Atchison, 336 F. App'x 819, 820-21 (10th Cir. 2009).  Further, "[a] district court that does not exercise its discretion, or makes a decision without providing reasons, abuses that discretion." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1459 (10th Cir. 1995).

Thus, the Court now employs a two-step analysis for determining whether an extension of time should be granted when a summons and complaint have not been timely served.  First, the plaintiff is entitled to a mandatory extension of time if the plaintiff can demonstrate good cause for failing to timely effect service.  See Espinoza v. United States, 52 F.3d at 841.  "The good cause provision of Rule 4[(m)] should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule."  Despain v. Salt Lake Area Metro Gang Unit, 13 F.3d 1436, 1438 (10th Cir. 1994)(internal quotation marks omitted). "[I]nadvertence or negligence alone do not constitute 'good cause' for failure of timely service. Mistake of counsel or ignorance of the rules also usually do not suffice."  In re Kirkland, 86 F.3d 172, 176 (10th Cir. 1996).  But avoiding or evading service of process may constitute "good cause," requiring a mandatory extension of time in which to serve.  Hendry v. Schneider, 116 F.3d 446, 449 (10th Cir. 1997).

Second, if the plaintiff fails to show good cause, the court still must exercise its discretion, and either dismiss the case without prejudice or extend the time for service.  See Espinoza v. United States, 52 F.3d at 842.  In making its determination whether to grant a permissive extension, the Court may consider several factors, including whether the applicable statute of limitations would bar the re-filed action and other policy considerations.  See Espinoza v. United States, 52 F.3d at 841-42.

> The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown. Such relief formerly was afforded in some cases, partly in reliance on Rule 6(b). Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.

Fed. R. Civ. P. 4(m) Advisory Committee's Notes to the 1993 Amendments.

## ANALYSIS

The Court will deny the MTR and grant the MTD. The Court will deny the MTR, because all of the Defendants in this case properly consented to the removal through their attorneys. The Court will grant the MTD, because McGrath did not respond to the MTD, and because he failed to timely serve Forney a copy of the Complaint without providing a good cause or any reason for doing so. Accordingly, the Court will dismiss all of McGrath's claims against Forney without prejudice.

## I.    THE COURT WILL DENY THE MTR.

Under 28 U.S.C. § 1446(a), "[a] defendant or defendants desiring to remove any civil action" must file a "notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure." Rule 11, in turn, provides that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record," Fed. R. Civ. P. 11(a), and that "[b]y presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney . . . certifies that . . . the factual contentions [therein] have evidentiary support . . . ," Fed. R. Civ. P. 11(b). Perry's, Rizzieri's, Berry's, and the City of Albuquerque's attorney filed the Notice, which removed this case to federal court on May 27, 2014. See Notice at 1. The Personnel Board's attorney filed a consent to removal that same day. See Consent to Removal, filed May 27, 2014 (Doc. 8). Forney personally filed a

consent to removal the following day.  <u>See</u> Consent to Removal, filed May 28, 2014 (Doc. 9).

Accordingly, all Defendants properly consented to the removal of this case through their

attorneys.

McGrath suggests that all defendants must personally sign a consent to removal for their

consent to be valid.  He argues that, aside from Forney, none of the other Defendants properly

consented to removal, because they did not personally sign their respective removal forms.

Nothing in rule 11 prohibits counsel for a defendant from making representations on behalf of

their client or clients.   In fact, rule 11 expressly requires that attorneys make such

representations.  <u>See</u> Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper

must be signed by at least one attorney of record.").  The Court has previously held that counsel

may consent to removal on behalf of their client.

> Courts are concerned that without some clear sign of who has consented to
> removal, some parties might not be bound by the notice.  But this concern is
> significantly reduced when counsel makes a written representation under rule 11.
> It is all but eliminated when the representation is on behalf of his or her clients.

<u>Roybal v. City of Albuquerque</u>, 2008 WL 5991063, at *8 (citation omitted).  <u>Cf.</u> <u>Tresco, Inc. v.</u>

<u>Continental Cas. Co.</u>, 727 F. Supp. 2d 1243, 1254-55 (D.N.M. 2010)(Browning, J.)(holding that

counsel for one defendant may represent that another defendant has consented to the removal).

McGrath has not provided a reason for the Court to revise or alter its previous rulings, and the

Court sees no reason to depart from those rulings either.

McGrath suggests that Judge Parker's decision in <u>Anderson v. City of Albuquerque</u>

dictates a different result.  McGrath points out that, in that case, Judge Parker remanded the case

to state court, holding that "'it is well established that the procedural requirements for removal

are strictly enforced and that 'all doubts are to be resolved against removal.'"  MTR at 5 (quoting

<u>Anderson v. City of Albuquerque</u>, slip op. at 4).  McGrath never explains, however, how that

case is similar to this one.  Indeed, Judge Parker found the removal improper in that case, because the Personnel Board did not provide their consent to removal within thirty days of receiving the complaint, as 28 U.S.C. § 1446(b) requires  See Anderson v. City of Albuquerque, slip op. at 3-4 ("The City Personnel Board did not provide the Court with timely written notice of its consent to remove the case.").  Judge Parker's opinion says nothing, however, about whether an attorney can consent to removal on a client's behalf.  Here, by contrast, McGrath has not alleged that the Defendants failed to timely file their notices of consent to removal.  Accordingly, Anderson v. City of Albuquerque is inapposite.  McGrath also asserts that the City Defendants' consent was invalid, because they did not give informed consent.  McGrath has presented no evidence to support his assertion, however.  Without some evidence that the Defendants are unaware of this case or never consented to the removal of this case, the Court must accept their attorneys' representations on their face.  Accordingly, the Court will deny the MTR.

## II.     THE COURT WILL GRANT THE MTD.

At the outset, the Court notes that, under Local Rule 7.1(b), McGrath's failure to respond to the MTD constitutes his consent to the Court's granting of the MTD.  See Qian v. E. N.M. Univ., No. CIV 06-0102 JB/LCS, 2007 WL 581658, at *1 (D.N.M. Jan. 29, 2007)(Browning, J.) ("[P]ursuant to Local Rule 7.1(b), Qian's failure to file and serve any response in opposition to the Defendants' motion for dismissal constitutes his consent to the Court's granting of the Defendants' motion."); D.N.M.LR-Civ. 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."); D.N.M.LR-Civ. 7.6(a) ("A response must be served within fourteen (14) calendar days after service of the motion.").  Indeed, McGrath has had no contact with the Court whatsoever since his previous attorney -- Paul Livingston -- was disbarred.  Ms. Wild has sent

notices of the motions and hearings to McGrath's last known address -- and the mail has not been returned as undeliverable -- but McGrath has not responded to those notices, made an appearance at a hearing, or contacted the Court in any way.  Although the Court "generally does not grant dispositive motions on procedural defaults alone," Estate of Anderson v. Denny's Inc., 291 F.R.D. 622, 633 (D.N.M. 2013)(Browning, J.), McGrath has given the Court no reason to conclude that he opposes this motion.  Moreover, a dismissal without prejudice may be the best path forward for McGrath right now, given his current lack of counsel.  If the Court were to proceed to McGrath's claims against Forney on their merits, it likely would rule on the merits without any briefing or argument from McGrath at all.  Dismissing without prejudice gives McGrath an opportunity to find new counsel and to determine what, if any, claims he wants to litigate going forward.

As a second ground, the Court will grant the MTD, because McGrath failed to timely serve Forney with the Complaint, as rule 4(m) of the Federal Rules of Civil Procedure requires. Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  McGrath filed the Complaint in state court on January 9, 2014, and did not serve Forney with the Complaint until 125 days later, on May 14, 2014.  See Tr. at 10:4-18 (Campbell).  Although it is only a five-day gap, McGrath has failed to offer any explanation for the delay, much less a showing of good cause.  A court may "relieve a plaintiff of the consequences of an application of [rule 4(m)] even if there is no good cause shown," Fed. R. Civ. P. 4(m), Advisory Committee's Note, but the Court sees no reason to do so in this case.

Given that McGrath failed to respond to the MTD and did not timely serve Forney with the Complaint, the Court will grant the MTD in part and dismiss McGrath's claims against Forney without prejudice.  While the Court normally would be liberal in extending the time of service, McGrath has given the Court no basis for extension.  In the end, this dismissal, without prejudice, seems fairer to McGrath than giving him an unrequested extension and then ruling on the merits of his claims without any briefing or argument from him.

**IT IS ORDERED** that: (i) Defendant Paula I. Forney's Motion to Dismiss, filed June 4, 2014 (Doc. 14), is granted in part; and (ii) the Plaintiff's Motion to Remand, filed June 26, 2014 (Doc. 20), is denied.  Consequently, the Court will dismiss without prejudice all of Plaintiff Michael McGrath's claims against Defendant Paula Forney in the Complaint for Violation of Statutory and Constitutional Rights, filed in state court on January 9, 2014, filed in federal court on May 27, 2014 (Doc. 1-1).

_____
UNITED STATES DISTRICT JUDGE

*Party and counsel:*

Paul Livingston
Placitas, New Mexico

      *Attorney for the Plaintiff*

Michael McGrath
Albuquerque, New Mexico

> *Plaintiff pro se*

Rebecca E. Wardlaw
  Managing Assistant City Attorney
Marie Legrand Miller
Melissa Marie Kountz
Samantha M. Hults
  Assistant City Attorneys
Albuquerque, New Mexico

--and--

Stephen G. French
Paula I. Forney
Erika E. Anderson
French & Associates, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendants City of Albuquerque, Richard Berry, Robert J. Perry, and Bruce Rizzieri*

Debra J. Moulton
Deborah D. Wells
Kennedy, Moulton & Wells, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendant City Personnel Board*

Ada B. Priest
Una Campbell
Madison & Mroz, P.A.
Albuquerque, New Mexico

> *Attorneys for Defendant Paula Forney*